[No. 31692-7-II.   Division Two.   April 26, 2005.]

EVERGREEN FREEDOM FOUNDATION, *Appellant*, v. GARY LOCKE, *as Governor*, ET AL., *Respondents*.

*Richard M. Stephens* and *Diana M. Kirchheim* (of *Groen Stephens & Klinge, L.L.P.*), for appellant.

*Robert M. McKenna, Attorney General*, and *Nancy J. Krier, Assistant*, for respondents.

*Richard W. Oehler* and *Cori Gordon Moore*, for intervenor Boeing Company.

¶1 VAN DEREN, J. — Evergreen Freedom Foundation (EFF) made multiple requests to the Washington State Department of Community, Trade and Economic Development (the Department) for disclosure of an agreement between the Department and The Boeing Company (Boeing) to develop an airplane assembly facility in Everett.

EFF appeals the trial court's ruling that the Department properly withheld certain redacted portions of the agreement under chapter 42.17 RCW, commonly referred to as the public disclosure act (PDA).[1] EFF also appeals the trial court's requirement that it make all further disclosure requests through counsel and its refusal to award attorney fees, costs, and penalties. Holding that the redacted portions of the agreement were exempt from disclosure, we affirm the trial court's (1) refusal to order their release to EFF; (2) refusal to award fees, costs, and penalties to EFF; and (3) case management order requiring future record requests to be submitted through counsel, but only so long as the present litigation is pending in the trial court.

## FACTS

¶2 On December 19, 2003, Boeing and Governor Gary Locke signed "the 7E7 master site development and location agreement" (Agreement), allowing Boeing to develop an airplane assembly facility in Everett, Washington.[2] Clerk's Papers (CP) at 20. That same day, EFF phoned the Governor's office to request a copy of the Agreement. On December 22, EFF submitted a written request to the Department for the entire Agreement.[3]

¶3 On December 23, 2003, the Department wrote to EFF, acknowledging receipt of its request. The Department also provided EFF a copy of the Agreement "without its supplemental documents," which it agreed to provide "once [the Department] has received them from The Boeing Company and reviewed them for redaction." CP at 339.

---

[1] RCW 42.17.260 to .348 sets forth the duty of state agencies to make available for public inspection and copying all public records, unless the record falls within the specified exemptions. RCW 42.17.260(1).

[2] According to the Department, during oral argument, the project was formerly known as the 7E7 project but is now named the 787 project.

[3] EFF's requests and communications with the Department have been ongoing and, in some cases, overlapping since this original request.

¶4 By January 9, 2004, EFF had not heard from the Department and it e-mailed a "follow-up request" to obtain the supplemental documents. Br. of Appellant at 3.

¶5 On January 14, the Department provided its "final response" to EFF's public records request. CP at 434. It included all of the supplemental documents except the following, which were either completely withheld or provided in partially redacted form: Schedules 1-3; Exhibits C-10, D-1, D-3, E, F, G; and the executive order (cited in the Agreement).

¶6 The Department explained that it had not provided the withheld or redacted portions because they include "proprietary and valuable trade secret information of Boeing and information in connection with the siting, recruitment, expansion, retention, or relocation of Boeing's business. This information is therefore exempt from disclosure at this time, pursuant to RCW 42.17.319(1)(b);[4] RCW 42.17.310(1)(h)[5] [and] chapter 19.108 RCW."[6] CP at 434.

¶7 On January 26, EFF made a written request for the remaining withheld and redacted documents. This request noted that EFF had made the original request on December 19 and asked that the documents be provided the following day.

¶8 The Department responded on January 29, indicating that it needed an additional 10 business days to produce the documents. The following day EFF demanded that the Department provide the documents immediately and

---

[4] RCW 42.17.319(1)(b):

Financial or proprietary information collected from any person and provided to the department or the office of the governor in connection with the siting, recruitment, expansion, retention, or relocation of that person's business and until a siting decision is made, identifying information of any person supplying information under this section and the locations being considered for siting, relocation, or expansion of a business.

[5] RCW 42.17.310(1)(h): "The following are exempt from public inspection and copying: . . . (h) Valuable formulae, designs, drawings, computer source code or object code, and research data obtained by any agency within five years of the request for disclosure when disclosure would produce private gain and public loss."

[6] Ch. 19.108 RCW, Uniform Trade Secrets Act.

threatened legal action if it did not timely do so. The Department explained to EFF that many of the supplemental documents were not included with the Agreement provided to EFF because those documents either did not yet exist, had not been received from Boeing, or were still under review.

¶9 When EFF had not received the additional documents by February 5, it delivered a letter to the Department stating that it would sue to compel disclosure if it did not receive the documents by the following day. When the Department did not provide the supplemental documents on February 6, EFF sued under the PDA.

¶10 On February 12, exactly 10 business days after the Department's January 29 response, it delivered to EFF Schedules 1-3 in redacted form as promised. On February 24, 2004, the Department provided EFF with Exhibits D-1 and D-3 in their entirety, after Boeing concluded that the documents did not contain proprietary or trade secret information.

¶11 A show cause hearing was held on February 27, at which time the court agreed to conduct an in camera inspection of the remaining nine pages of redacted information. Specifically, the documents at issue were redacted portions of Schedules 2 and 3, Exhibit C-10, and Exhibit E-1.[7] The court also ordered that any future public records requests between the Department and EFF be made through counsel to prevent redundancy and as a case management tool.

¶12 On March 5, the court notified the parties in writing that, after reviewing the documents, it concluded that the documents were properly redacted and exempt from disclosure under the PDA. It based this ruling on RCW 42.17.310(1)(h).

¶13 On March 26, the court held an additional hearing and adopted the Department's proposed findings of fact and conclusions of law, citing RCW 42.17.319(1)(b) as the basis

---

[7] Exhibits F, G, and the executive order were no longer at issue.

for exempting the redacted information. It also denied EFF's oral request for attorney fees, costs and penalties.

¶14 In its brief on appeal, EFF challenges the trial court's ruling that (1) the documents were properly withheld or redacted; (2) all future document requests had to be made through counsel; and (3) attorney fees, costs, and penalties were unwarranted. At oral argument on appeal, nine pages of partially redacted documents remained at issue. The documents are under seal in the record on appeal and the redacted portions comprise the following: (1) three sentences of Exhibit C-10; (2) three sentences of Exhibit E; (3) one word on page 10 and one word on page 13 of Schedule 2; (4) a total of five sentences on pages three, four, and six of Schedule 3; (5) three lines on Attachment A, page 11, of Schedule 3; and (6) three lines on Attachment B, page 12, of Schedule 3. We have independently reviewed and resealed these redacted portions.

## ANALYSIS

### I. PDA Exemption

¶15 EFF argues that the Department has unlawfully withheld portions of the Agreement from public inspection, contravening the PDA. The Department responds that the redacted portions of the Agreement are exempt from disclosure under RCW 42.17.310(1)(h), .319(1)(b), and the Uniform Trade Secrets Act (UTSA), chapter 19.108 RCW.[8]

¶16 Appeals under the PDA are subject to de novo judicial review. RCW 42.17.340(3); *Hangartner v. City of Seattle*, 151 Wn.2d 439, 447, 90 P.3d 26 (2004); *Progressive Animal Welfare Soc'y (PAWS) v. Univ. of Wash.*, 125 Wn.2d 243, 252, 884 P.2d 592 (1994) (" '[j]udicial review of all agency actions taken or challenged under RCW 42.17.250 through 42.17.320 shall be de novo' ") (alteration in original) (quoting RCW 42.17.340(3)).

---

[8] The UTSA qualifies as an "other statute" which is exempted from disclosure under the PDA. *See* RCW 42.17.260(1); *Progressive Animal Welfare Soc'y (PAWS) v. Univ. of Wash.*, 125 Wn.2d 243, 250, 884 P.2d 592 (1994).

¶17 The PDA's purpose is to require state agencies to make available for public inspection and copying all public records, unless the record falls within the enumerated exceptions. RCW 42.17.260(1). The PDA is broadly interpreted, requiring agencies to provide "the fullest assistance to inquirers and the most timely possible action on requests for information." RCW 42.17.290. The state agency has the burden to establish the applicability of the relevant exceptions. RCW 42.17.310(4), .340(1).

¶18 The trial court here ruled that the redacted portions "satisfy the requirements for trade secrets and research materials, and are, therefore, exempt under RCW 42-.17.310, from disclosure under the [PDA]." CP at 1385. The trial court subsequently adopted the Department's proposed findings, in which the court found the records exempt under RCW 42.17.319(1)(b).

## A. RCW 42.17.310(1)(h)

¶19 The Department and Boeing have consistently maintained that the redacted portions of the Agreement contain valuable information that, if made public, would result in public loss and private gain. Under RCW 42-.17.310(1)(h), an agency is not obligated to disclose "[v]aluable formulae, designs, drawings, computer source code or object code, and research data obtained by any agency within five years of the request for disclosure, when disclosure would produce private gain and public loss."

¶20 The purpose of RCW 42.17.310(1)(h) is to prevent private gain derived from the exploitation of potentially valuable intellectual property created for public benefit. *PAWS*, 125 Wn.2d at 255. The information the Department withheld consists of designs that reveal details of plans necessary to facilitate the 787 project.

¶21 Public release of these details could arguably lead to private gain and public loss. Private parties could interfere with, or compete with, project plans to benefit their own company. *See Servais v. Port of Bellingham*, 127 Wn.2d 820, 832, 904 P.2d 1124 (1995). Such private interference would,

in turn, harm the public if it compromised the viability of the Department's agreement with Boeing. Thus, the trial court did not err in allowing the Department's redaction of these documents under this statute.

## B. RCW 42.17.319(1)(b)

¶22 The Department and Boeing also contend that the redacted information is exempt under RCW 42.17.319(1)(b).

¶23 EFF argues that this statute applies only while a siting decision is being made and that after the siting decision is made, proprietary information must be disclosed. But the plain statutory language indicates that financial and proprietary information an individual gives to the Department is exempt from disclosure whenever it relates to the siting, recruitment, expansion, retention, or relocation of that person's business.

¶24 The redacted information contains information about Boeing's needs in order to effectuate the goals of the Agreement, specifications for its design and consultation needs, and anticipated costs of project components at different sites. Thus, the Department properly withheld the information under RCW 42.17.319(1)(b).

## C. UTSA

¶25 Finally, the Department and Boeing assert that the PDA does not require public disclosure because the redacted portions contain "[t]rade secrets" under the UTSA. RCW 19.108.010(4). Trade secrets are defined as "information, including a formula, pattern, compilation, program, device, method, technique, or process" that derives value from retaining secrecy, is not readily ascertainable by others, and necessitates reasonable efforts to maintain confidentiality. RCW 19.108.010(4).

¶26 Arguably, the redacted information would fall under this exception to the PDA. It discusses and details the program components that Boeing is clearly attempting to keep confidential. And the disclosure of certain program details could potentially make the overall Agreement less

profitable and less viable. But having determined that the Department was exempt from disclosing the remaining disputed portions of the Agreement under RCW 42.17-.310(1)(h) and RCW 42.17.319(1)(b), we do not rely on the UTSA to affirm the trial court's decision on the propriety of the redactions.

## II. Future PDA Requests

¶27 The Department asserts that the trial court's order requires all further document requests from EFF to go through its counsel to defendant's counsel during the entirety of the 787 project, even after the conclusion of the present litigation. The PDA requires that a public agency respond to a PDA request within five days of receiving the request. RCW 42.17.320. EFF asserts that the trial court order runs afoul of this mandate if it requires that all further document requests from EFF to the Department be presented and responded to through counsel.

¶28 The trial court specifically ordered:

All current and future public disclosure requests and related communications regarding the 7E7 Project and Master Agreement from [EFF] must be transmitted through [EFF's] counsel to Defendant's counsel for review for consistency, to provide an opportunity for clarification, to reduce the multiplicity and duplicative requests, and to alleviate the substantial and irreparable damage to vital governmental functions and impact on limited staff resources for the responding agency. . . . For new public records requests, the Defendants' time period to respond under RCW 42.17 begins after this review process is completed and on the date that the Defendant agency receives the request.

CP at 1441. EFF's counsel did not object to this procedure as a case management tool. But EFF does object if its effect is extended beyond the confines of the present case. The Department argues that EFF's counsel waived any argument regarding this provision by failing to object when the trial court issued its order.

¶29 First, the trial court's order does not alleviate the Department's duty to provide a response within five days as RCW 42.17.320 requires. On the contrary, the order specifically refers to the statutory time constraint and explains when the five day period begins. The order is consistent with the statute, beginning the five day period when the Department receives the document request.

¶30 Second, this order was clearly a case management tool. And a court reviewing a PDA ruling will not "interfere with trial courts' *litigation* management decisions." *Brouillet v. Cowles Publ'g Co.*, 114 Wn.2d 788, 801, 791 P.2d 526 (1990) (emphasis added). The record reveals that multiple people from EFF were making requests to the Department for documents and that responding to EFF's requests consumed a significant portion of staff time and resources. Thus, the court acted within its discretion by imposing a mechanism to better manage EFF's disclosure requests *during the litigation.*

¶31 But we know of no authority for the trial court to extend its jurisdiction beyond an existing controversy or case before it. Nor do we interpret the trial court's order to do so. Furthermore, we know of no authority, and counsel could cite none, that vests trial counsel with the ability to effectively waive a client's statutory right to request documents under the PDA following the conclusion of this litigation.

¶32 Thus, we affirm the trial court's order to the extent that it limits future requests to those submitted through counsel only while this case is pending at the trial court.

### III. Attorney Fees, Costs and Penalties

¶33 Finally, EFF asserts that the trial court erred in refusing to award attorney fees, costs, and penalties in its favor. Under the PDA, attorney fees are available to a prevailing party. RCW 42.17.340(4). But EFF did not prevail in its action at the trial court.

■ ¶34 EFF argues that because the suit resulted in the Department's disclosure of documents, attorney fees are warranted. It cites *Coalition on Government Spying v. King County Department of Public Safety*, for this proposition. 59 Wn. App. 856, 801 P.2d 1009 (1990). In *Coalition*, the court awarded attorney fees because the " 'lawsuit had a causative effect on the release of the information.' " 59 Wn. App. 864 (quoting *Miller v. United States Dep't of State*, 779 F.2d 1378, 1389 (8th Cir. 1985)).

¶35 Here, EFF made a written request for the remaining withheld and redacted documents on January 26. On January 29, the Department responded, stating that it needed an additional 10 business days to produce the documents. EFF filed its lawsuit on February 6. On February 12, exactly 10 business days after the Department's response, it delivered Schedules 1-3 in redacted form.

¶36 This timeline indicates that the Department's provision of Schedules 1-3 did not result from EFF's lawsuit, but was a consequence of those documents becoming available for the Department to publish. On multiple occasions the Department explained to EFF that many of the documents it requested were not available because those documents either did not yet exist, had not been received from Boeing, or were still under review.

¶37 Every communication from the Department indicated that it was doing its best to give EFF the requested records in a timely manner. EFF's lawsuit was not the catalyst for the Department's document disclosure, and as a result, EFF does not qualify as a prevailing party. Furthermore, Boeing and the Department have continued throughout the litigation to produce the formerly redacted portions of the documents as the information becomes public, resulting in the limited number of redactions challenged on appeal. Thus, EFF's claim for attorney fees, penalties, and costs fails.[9]

---

[9] EFF is similarly not entitled to attorney fees on appeal as it is not the prevailing party. Further, EFF has failed to comply with the requirements of RAP 18.1(b).

¶38  We affirm the trial court's (1) refusal to award fees, costs, and penalties to EFF; (2) finding that exemptions apply to the disputed portions of the redacted documents; (3) order that the redactions need not be revealed to EFF; and (4) case management order requiring future record requests to be submitted through counsel, but only so long as the present litigation is pending in the trial court.

QUINN-BRINTNALL, C.J., and HUNT, J., concur.